Kenneth M. Motolenich-Salas (AZ Bar No. 027499)
kmotolenich@weissiplaw.com
Michael B. Dvoren (AZ Bar No. 027386)
mdvoren@weissiplaw.com
WEISS & MOY, P.C.
4204 N. Brown Avenue
Scottsdale, Arizona 85251
Tel: (480) 994-8888; Fax: (480) 947-2663
Attorneys for Plaintiff FlyBoard, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Flyboard, Inc., a Florida Corporation, | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | **(Jury Trial Demanded)** |
| Bluehost, Inc., a Utah Corporation, | |
| Defendant. | |

Plaintiff Flyboard, Inc. ("Flyboard"), by and through its undersigned counsel of the firm of Weiss & Moy, P.C., for its Complaint against Defendant Bluehost, Inc. ("Bluehost"), states and alleges as follows:

## NATURE OF THE ACTION

1. This action seeks rectification of tortious action taken by Bluehost as a result of wrongful and factually inaccurate complaints it received from a third party concerning the domain name flyboard.com, which is property of Flyboard. The wrongful action taken by Bluehost has caused Flyboard damages in the form of lost sales exceeding $75,000 and lost goodwill, which cannot be quantified.

/ / /

/ / /

1

**THE PARTIES AND SUBJECT MATTER**

2. Plaintiff FlyBoard, at all times relevant to this Complaint, was and is a Florida corporation having a principal place of business located at 36404 Lake Unity Road, Fruitland Park, Florida 34731.

3. On information and belief, Defendant Bluehost, Inc. ("Bluehost"), at all times relevant to this Complaint, was and is a corporation organized under the laws of Utah with an address of Legal Department, 1958 S. 950 E, Provo, Utah 84606.

4. The subject of this action is Bluehost's deprivation of Flyboard's property right in the domain name Flyboard.com ("Domain Name").

**JURISDICTION AND VENUE**

5. Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over the subject matter of this action based on diversity of citizenship between Flyboard and Bluehost (collectively, "the Parties"), which are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b), because Bluehost is subject to personal jurisdiction in this district, and a substantial part of the alleged events or omissions giving rise to the claims occurred in this district, including but not limited to the fact that the Domain Name is registered through GoDaddy.com LLC ("GoDaddy"), whose principal place of business is in Arizona.

**ALLEGATIONS COMMON TO ALL COUNTS**

1. Flyboard is a highly specialized company well-known for its skills in the field of distribution of jet skis accessories.

2. Flyboard, through Robinson, obtained the Domain Name on May 14, 2012.

3. FlyBoard owns all right, title, and interest in the Domain Name.

4. Since acquiring the Domain Name, Flyboard has used the Domain Name to offer for sell and sell jet ski accessories in interstate commerce.

1      5.     As such, Flyboard has substantial common law property rights in and to
2  the Domain Name and any content posted thereon.
3      6.     As further proof of its rights in the Domain Name, Robinson filed an
4  application for a United States Trademark on April 11, 2012 for FLYBOARD in
5  international class 12 for personal watercraft (namely, water-jet propulsion driven
6  harnesses), which was assigned Serial No. 85/594,217 ("the Flyboard Mark").
7      7.     Robinson has assigned all her rights, title, and interest in and to the
8  Flyboard Mark to Flyboard.
9      8.     A third party, Personal Water Craft Products ("PWC") filed a complaint
10 ("WIPO Complaint") with the World Intellectual Property Office ("WIPO") pursuant to
11 the Uniform Dispute Resolution Policy ("UDRP") on October 31, 2012 seeking transfer
12 of the Domain Name from Flyboard to PWC.
13     9.     The complaint was assigned WIPO Case No. D2012-2166.
14     10.    PWC and Flyboard are parties to a contract concerning the distribution of
15 jet ski accessories ("Flyboard Contract").
16     11.    In responding to the WIPO Complaint, Flyboard stated that, pursuant to
17 the FlyBoard Contract, PWC granted to Flyboard the right to use the Flyboard Mark for
18 the purposes of importation, promotion, distribution, marketing, and sales in interstate
19 commerce, such that its registration and use of the Domain Name was done for
20 legitimate purposes and not in bad faith.
21     12.    Moreover, in responding to the WIPO Complaint, Flyboard stated that,
22 pursuant to the Flyboard Contract, PWC granted to FlyBoard the right to use the
23 Flyboard Mark in the Domain Name and in any other communication or business or
24 commercial documentation.
25     13.    As explained by Flyboard in the WIPO proceeding, Flyboard, before
26 purchasing the Domain Name, consulted with and offered it to PWC.  However, PWC
27 declined to purchase the Domain Name, stating that Flyboard could own the Domain
28 Name.

3

14. Moreover, as explained by Flyboard in the WIPO proceeding, PWC acknowledged to Flyboard that the Domain Name was Flyboard's sole property and that PWC was willing to change its own website to ensure that Flyboard's information and Domain Name were correctly listed therein.

15. Furthermore, PWC facilitated Flyboard's ownership, use, and maintenance of the Domain Name by providing website-related materials to Flyboard for the Domain Name including but not limited to photographs and product user guides.

16. Additionally, PWC placed a hyperlink to the Domain Name on its own website.

17. Notwithstanding these facts, the WIPO arbitration panel erroneously concluded that the Domain Name was registered and used by Flyboard in bad faith.

18. On January 7, 2013, WIPO ordered transfer of the Domain Name to Defendant PWC if Flyboard did not act quickly by filing a declaratory judgment action in the District of Arizona (WIPO Case No. D2012-2166).

19. To maintain the status quo and prevent any change in ownership or transfer of the Domain Name, Flyboard filed a declaratory judgment action against PWC and its principal Franky Zapata in this Court (Case No. 2:13-cv-00246-SLG) ("Domain Name Action").

20. As of the filing date of the Domain Name Action, the name servers associated with the Domain Name belonged to Bluehost as is evidenced by the WhoIs search result for the Domain Name, a true and correct copy of which is attached hereto as ***Exhibit 1***.

21. Through the Domain Name, Flyboard sells multiple products to consumers.

22. Moreover, the Domain Name is a primary source of Flyboard's goodwill. For example, customers were familiar with Flyboard's name associated with the Domain Name, and the Domain Name was the No. 1 search result position on Google

4

1  and other internet search engines for searches run on the term "flyboard", which
2  generated further sales and growth of goodwill.

3     23. To circumvent its granting of any and all of its rights to the Domain
4  Name and in a wrongful, tortious effort to alter the status quo while this Court resolved
5  the Domain Name Action, PWC and Zapata filed numerous false and wrongful claims
6  with Bluehost claiming, *inter alia*, violations of PWC and Zapata's trademark,
7  copyright, and other intellectual property rights by virtue of content of the website
8  associated with the Domain Name ("Website Content").

9     24. Flyboard, without having received notice of such complaints from
10 Bluehost, discovered earlier in April 2013 that Bluehost had disabled the Domain Name
11 based on PWC and Zapata's false complaints.

12    25. Flyboard did, however, receive one notice from Bluehost later in April
13 2013, but that was only after the Domain Name had already been disabled.

14    26. Flyboard vigorously objected with the contentions in the complaints and
15 believed that the Website Content did not run afoul of any of PWC and Zapata's
16 trademark, copyright, and other intellectual property rights.

17    27. Nonetheless, to facilitate the maintaining of the Domain Name and
18 continue sales and maintenance of its established goodwill, Flyboard revised its
19 Website Content.

20    28. In an email from Bluehost, a true and correct copy of which is attached
21 hereto as **_Exhibit 2_**, Bluehost informed Flyboard that it was satisfied that the Website
22 Content no longer was in violation of its policies as alleged in the complaints lodged by
23 PWC and Zapata.

24    29. Despite Flyboard's actions in making changes to Website Content and
25 assurances from Bluehost that the Website Content was now compliant, Bluehost
26 disabled the Website Content associated with the Domain Name, causing Flyboard to
27 create a work-around solution of redirecting the Domain Name to
28 flyingwatersports.com.

30. Before the filing of this Complaint, Flyboard, directly and through counsel, requested Bluehost enable the Website Content to the Domain Name.

31. Despite requesting that Bluehost enable the Website Content associated with the Domain Name, Bluehost wrongfully deprived and continues to wrongfully deprive Flyboard of its property right in the Domain Name, refusing to enable the Website Content to allow the hosting of the Website Content, which Bluehost itself concluded was complaint with its own policies and terms of use, on the Domain Name.

32. As a result of Bluehost's wrongful, Flyboard has lost sales in excess of $75,000.

33. Moreover, as a result of Bluehost's wrongful actions, the Domain Name is not even listed on Google and other internet search engines for searches conducted on the term "flyboard". This has caused incalculable loss of goodwill which, if not remedied immediately by this Court, will continue to cause Flyboard additional loss of goodwill and sales.

34. As of the filing date of this Complaint, the Domain Name cannot display the Website Content, and internet users are unwittingly redirected to flyingwatersports.com, effectively depriving Flyboard of its property rights in the Domain Name and causing irreparable harm in the form of lost goodwill in and to the Domain Name.

**COUNT I: CONVERSION UNDER ARIZONA LAW**

35. Flyboard repeats and realleges by this reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

36. By depriving Flyboard of its legitimate and lawful rights to post the Website Content on the Domain Name, Bluehost tortiously converted the Domain Name, the full access and use of which is owed to Flyboard under the contract between Bluehost and Flyboard.

37. Bluehost's conduct was intentional and wrongful.

6

1  38. As a direct and proximate result of Bluehost's conversion of property rightfully belonging to Flyboard, Flyboard has sustained compensatory, general, special, consequential, and incidental damages, lost profits/lost opportunities, and similar damages in an amount to be proven at trial in excess of $75,000. .

39. Bluehost intended to injure Flyboard for its own pecuniary and wrongful gain to avoid perceived liability or loss from the false and factually inaccurate complaints lodged by PWC and Zapata and to the detriment and harm of Flyboard.

40. Bluehost's conduct was extreme and outrageous, and the trier of fact could reasonably infer that (i) Bluehost intended to injure Flyboard, or (ii) Bluehost, having reason to know, consciously disregarded a substantial risk of harm that Bluehost's conduct might significantly injure Flyboard. Given this conduct, Flyboard is entitled to punitive damages in an amount appropriate to punish Bluehost.

41. Flyboard has not directly or indirectly breached the contract with Bluehost, or committed any act of tortious interference with contractual relations, libel, slander, fraud, intentional misrepresentation, negligence, tortious interference with business relations, tortious interference with contract, or intentional infliction of emotional distress against Bluehost.

## COUNT II: BREACH OF CONTRACT

42. Flyboard repeats and realleges by this reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

43. Flyboard and Bluehost entered into a terms of service contract under which Flyboard agreed to comply with Bluehost's terms of service including, *inter alia*, complying with Bluehost's requests to address complaints lodged by third parties with Bluehost concerning Website Content hosted by Bluehost.

44. Flyboard has fully complied with the terms of the Parties' contract.

45. Bluehost has materially breached and is in material breach of the contract by failing and refusing to perform under its obligations thereunder by, among other things, the obligation to enable the Website Content on the Domain Name after

7

1 Flyboard's actions in revising such content so as to address complaints Bluehost
2 received from PWC and Zapata.

3     46.    As a direct and proximate result of Bluehost's material breach, Flyboard
4 has sustained compensatory, general, special, consequential, and incidental damages,
5 lost profits/lost opportunities, and similar damages in an amount to be proven at trial
6 that exceed $75,000.

7     47.    Because this action arises out of a contract, express or implied, Flyboard
8 is entitled to an award of attorney's fees against Bluehost, in accordance with Ariz.
9 Rev. Stat. Ann. § 12-341.01.

10     48.    In light of Bluehost's material breach, Flyboard is entitled to all of its
11 rights and remedies under the contract.

12     49.    Bluehost's unlawful conduct, including but not limited to its material
13 breach, is causing immediate and irreparable injury to Flyboard and will continue to
14 damage unless preliminarily and permanently enjoined by this Court.  Flyboard has no
15 adequate remedy at law.

16 **COUNT III: BREACH OF THE DUTY OF GOOD FAITH**
17 **AND FAIR DEALING**

18     50.    Flyboard repeats and realleges by this reference each and every allegation
19 set forth in the preceding paragraphs as though set forth in full herein.

20     51.    Bluehost owed Flyboard a contractual duty of good faith and fair dealing.

21     52.    Bluehost has materially breached and is in material breach of the
22 covenant of good faith and fair dealing arising out of the contract with Flyboard by,
23 among other breaches, failing to enable the Website Content on the Domain Name after
24 Flyboard's actions in revising such content so as to address complaints Bluehost
25 received from PWC and Zapata.

26     53.    As a direct and proximate result of the breach of the covenant of good
27 faith and fair dealing by the Bluehost, Flyboard has sustained compensatory, general,
28

special, consequential, and incidental damages, lost profits/lost opportunities, and similar damages, in an amount to be proven at trial that exceed $75,000.

54. Because this action arises out of a contract, express or implied, Flyboard is entitled to an award of attorney's fees against Defendants, in accordance with Ariz. Rev. Stat. Ann. § 12-341.01.

## **COUNT IV: INTENTIONAL INTERFERENCE WITH BUSINESS EXPECTANCIES UNDER ARIZONA LAW**

55. Flyboard repeats and realleges by this reference incorporates each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

56. Flyboard had business relationships with numerous customers through the Domain Name concerning the sale of products therethrough and had, over a course of time and through considerable expenditure of effort and money, developed a legitimate, advantageous business expectancy to maintain and increase its sales of such products to such customers.

57. Bluehost had direct knowledge of Flyboard's contractual relationships and prospective business expectancies.

58. Bluehost intentionally and improperly interfered with Flyboard's contractual relationships and prospective business expectancies with numerous customers by not enabling the Website Content on the Domain Name for its own benefit to avoid perceived liability or loss from the false and factually inaccurate complaints lodged by PWC and Zapata and to the detriment and harm of Flyboard.

59. Bluehost was not justified in interfering with Flyboard's contractual relationships and prospective business expectancies because, among other reasons, it promised and covenanted to Flyboard it would not do so under the contract between them.

60. As a direct and proximate result of Bluehost's acts, Flyboard has been damaged in an amount to be proven at trial.

61. Bluehost's actions were intentional, aggravated and were committed with an evil mind and with the intent to cause harm, or in reckless and/or deliberate disregard of an unjustifiably substantial risk of significant harm to Flyboard.

**COUNT V: TRESPASS TO CHATTELS UNDER ARIZONA LAW**

62. Flyboard repeats and realleges by this reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

63. By intentionally, wrongfully, and tortiously disabling the Website Content on the Domain Name, Bluehost trespassed on such property of Flyboard.

64. Bluehost acted knowingly and directly in causing the aforesaid events to happen and has a financial interest in the events to avoid perceived liability or loss from the false and factually inaccurate complaints lodged by PWC and Zapata.

65. Bluehost caused harm to Flyboard through such actions by preventing internet access by consumers to the Website Content on the Domain Name and causing the loss of goodwill in and to the Domain Name.

66. Bluehost is liable for the damage caused by its actions.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Flyboard hereby sets forth its demand for a jury trial on all issues for which they are entitled to a jury trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FlyBoard, Inc. respectfully prays for relief and judgment against Defendant Bluehost, Inc.:

    i. For compensatory damages in an amount to be proved at trial;

    ii. For punitive damages in an amount sufficient to punish Bluehost and to deter Bluehost and others from such conduct in the future;

    iii. A temporary restraining order which requires Bluehost, all of its agents, partners, servants, employees, and all others in active concert or participation with Bluehost with respect to the Domain Name, to immediately enable the Website Content on the Domain

1 Name so that the Website Content is visible and accessible on the
2 Domain Name without the need for users to be redirected to
3 content on another domain name;
4     iv.    A preliminary and finally a permanent injunction enjoining
5 Bluehost, and all of its agents, partners, servants, employees, and
6 all others in active concert or participation with Bluehost with
7 respect to the Domain Name, (a) from taking any action to disable
8 the Website Content on the Domain Name so long as Flyboard is
9 in compliance with the terms of the contract between Bluehost and
10 Flyboard; and (b) from continuing to perform in any manner
11 whatsoever the acts complained of in this Complaint;
12     v.    Awarding Flyboard taxable costs incurred herein, with interest
13 thereon at the legal rate until paid in full;
14     vi.    Awarding Flyboard any other damages as allowed by law which
15 the facts alleged herein would support, including but not limited to
16 lost sales, consequential damages, and pre-judgment and post-
17 judgment interest;
18     vii.    Awarding Flyboard its reasonable attorney's fees; and
19     viii.    Awarding such other and further relief as the Court deems just and
20 proper.

Dated this 9th day of May, 2013.

Respectfully submitted,

WEISS & MOY, P.C

s/ Kenneth M. Motolenich-Salas
Ken Motolenich-Salas (AZ Bar No. 027499)
kmotolenich@weissiplaw.com
Michael B. Dvoren (AZ Bar No. 027386)
mdvoren@weissiplaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WEISS & MOY, P.C.
4204 N. Brown Avenue
Scottsdale, Arizona 85251
Tel: (480) 994-8888
Fax: (480) 947-2663
Attorneys for Plaintiff FlyBoard, Inc.